UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:11CR315 ERW |
| | ) (FRB) |
| DAVION C. JACKSON, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The defendant filed a Motion To Suppress Evidence And Statements (Docket No. 27). Testimony and evidence was adduced on the defendant's motion at a hearing before the undersigned on August 23, 2011. The defendant filed a post-hearing memorandum on August 26, 2011. Additional argument was heard on September 20, 2011.

On the testimony and evidence adduced on the defendant's Motion the undersigned makes the following findings of fact and conclusions of law:

<u>Findings Of Fact</u>

On July 13, 2011, Officer Dustin Partney, and his partner Officer Derik Jackson, both of the St. Louis County, Missouri, Police Department were on patrol in the community of Glasgow

Village in north St. Louis County, Missouri. The officers were in uniform and in a marked police vehicle. The officers were assigned to the Neighborhood Enforcement Team and were assigned to patrol in the Glasgow Village area on account of the high volume of crime in the area, and in particular crimes of burglary and assaults.

Officers Partney and Jackson were driving west on Shepley Drive. Another marked St. Louis County police car was driving some distance ahead of them, also westbound on Shepley Drive.

While thus on patrol Officer Partney saw a man walking eastbound on Shepley Drive. The man was accompanied by a woman. The man was wearing a tight fitting black colored tank top and tan khaki cargo shorts. He was carrying a paper bag in his left hand. The man's shorts were "sagging", that is hanging low on his hips. Officer Partney immediately recognized the man walking as Davion Jackson, the defendant here. Officer Partney knew Jackson from previous police contacts. He knew that Jackson had two prior felony convictions. He knew that Jackson was a member of a street gang whose members were known to possess firearms. He also knew that Jackson was too young to have a permit to carry a concealed weapon.[1]

---

[1] Court records show that Jackson was 19 years of age at the time of this occurrence. (See Docket No. 7 - Initial Appearance Form). In the State of Missouri a person must be at least 21 years of age to obtain a permit to carry a concealed weapon. See R.S.Mo. § 571.090.1(1).

As the police car traveling in front of Officer Partney drove by, Davion Jackson looked in the direction of the police car. As he did so he pulled up the right side of his "sagging" pants. Davion Jackson continued to look at the police car over his shoulder as it passed by him. Officer Partney testified that he considered it suspicious that Davion Jackson watched the police car in the manner that he did because in Officer Partney's experience subjects often do so to determine whether the police are going to attempt to stop them, and that the suspects often run away if they perceive that the officers intend to stop them. After the car passed, Davion Jackson let go of the right side of his pants. The pants dropped back to the hips very quickly. It appeared to Officer Partney that there was a heavy object in the right front pocket area of the pants.

After the first police car passed him Jackson looked in the direction of the police car in which Officer Partney was riding. Davion Jackson again pulled up the right side of his "sagging" pants as Officer Partney's police car drove by.

Officer Partney then stated to Officer Jackson that he believed Davion Jackson was carrying a firearm. The officers then turned the police car around and drove back to the area where Davion Jackson and the woman were walking. They stopped the police car in a driveway. Officer Partney told Davion Jackson to stop and place his hands on the back of the police car. Officer Partney

testified that Davion Jackson appeared tense and nervous at that point. Davion Jackson complied. Officer Partney then conducted a pat down search of the person of Davion Jackson. In Jackson's right front pants pocket area he felt an object. He then reached in the pocket and found and removed a loaded .45 caliber handgun. Davion Jackson was then placed under arrest for the offense of carrying a concealed weapon.

Davion Jackson was then taken to the police station. A record check revealed that the gun had been stolen in Cahokia, Illinois, in 2009. A record check was run on Davion Jackson which revealed that he had two prior felony convictions for Tampering With A Motor Vehicle and Stealing A Motor Vehicle.

At the station Officer Partney advised Davion Jackson of the <u>Miranda</u> rights by reading them to him from a form. Specifically, he advised Davion Jackson that he had the right to remain silent; that anything he said could be used against him in court; that he had the right to speak to an attorney before answering questions and to have an attorney present during any interview; and that if he could not afford an attorney one would be appointed for him. Davion Jackson then signed the portion of the form acknowledging that he had been advised of and understood his rights and that he was willing to answer questions without a lawyer present. He also acknowledged that no threats, promises or other coercion had been made or used against him. (<u>See</u> Government's

Exhibit 1).

Davion Jackson then told Officer Partney that he had purchased the gun from someone on the street for $400.00. He said that he believed the gun was stolen. He said that he bought the gun to use for his protection because someone was threatening him. An audio-tape recording was made of Davion Jackson's statement.

## Discussion

In his motion and supplemental post-hearing memorandum the defendant contends that the initial stop of the defendant was unlawful because not based on any reasonable suspicion that the defendant was engaged in any criminal activity.

Law enforcement officers may detain an individual for a brief period of time if they have reasonable suspicion that criminal activity is afoot. Terry v. Ohio, 392 U.S. 1, 30 (1968).

> The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to shrug his shoulders and to allow a crime to occur or a criminal to escape. On the contrary, Terry recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to . . . maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time.

Adams v. Williams, 407 U.S. 143, 145-46 (1972)(internal citations omitted).

In order to detain a person in such circumstances an officer must have "a particularized and objective basis" for suspecting criminal activity. <u>United States v. Jacobsen</u>, 391 F.3d 904, 906 (8th Cir. 2004). "Whether the particular facts known to the officer amount to an objective and particularized basis for a reasonable suspicion of criminal activity is determined in light of the totality of the circumstances." <u>United States v. Maltais</u>, 403 F.3d 550, 554 (8th Cir. 2005), <u>cert. denied</u>, 546 U.S. 1177 (2006). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory [detention]." <u>United States v. Fuse</u>, 391 F.3d 924, 929 (8th Cir. 2004). In forming a basis for suspicion officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" <u>United States v. Ortiz-Monroy</u>, 332 F.3d 525, 529 (8th Cir. 2003)(quoting <u>United States v. Arvizu</u>, 534 U.S. 266, 273 (2002)). A number of factors, innocent in and of themselves, may give rise to a reasonable suspicion in the eyes of a trained law enforcement officer. <u>United States v. Barker</u>, 437 F.3d 787, 790 (8th Cir. 2006). During such a stop police officers may take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo. <u>United States v. Hensley</u>, 469 U.S. 221, 235 (1985). The police officer may conduct

a pat down search of the suspect if the officer has a reasonable, articulable suspicion that the suspect may be armed. Terry, 392 U.S. at 30; United States v. Banks, 553 F.3d 1101, 1105 (8th Cir. 2009).

In his post-hearing memorandum the defendant cites to the Eight Circuit Court of Appeals decision in United States v. Jones, 606 F.3d 964 (2010), wherein the court held that police officers lacked a reasonable articulable suspicion to stop the defendant. In Jones the court described the facts of the case as follows:

> While routinely patrolling a high-crime area on a mild September afternoon, Omaha police officer Paul Hasiak saw a person later identified as Fonta M. Jones walking across a church parking lot wearing a long-sleeved hooded sweatshirt and "clutching the front area of his hoodie pocket with his right hand." Jones watched as the marked police cruiser drove by. The officers drove around the block and regained sight of Jones, still walking with his right hand clutching his front hoodie pocket in the same position. Officer Hasiak decided to stop and frisk Jones, who stopped walking when the cruiser pulled up. Hasiak told Jones to place his hands behind his back and them moved behind Jones, secured his hands, and patted him down for weapons. Jones was arrested when Hasiak found a 9-millimeter handgun in the front hoodie pocket and a loaded magazine in Jones's back right pocket.

Id. at 965.

The police officer also testified that based on his training and experience, a person "clutching" the front area of

their clothing in the manner he had observed, led him to believe that the suspect was carrying a firearm. The defendant claims that the observations of Officer Partney here were nearly similar to those by the officer in Jones, and that therefore, there was no basis for the stop of Jackson in this case.

While there are similarities in the observations underlying the stops, the information known to Officer Partney was greater, and in more detail, than the information known to the officer in the Jones case. As in the Jones case, the officers were on patrol in a high crime area. In Jones the patrol was described as "routine." Officer Partney testified that he had specifically been assigned to patrol in the Glasgow Village area because of an increase in criminal activity including burglaries and assaults. And as in Jones Officer Partney observed actions of the defendant which led him to believe that Jackson was carrying a weapon. In Jones, the defendant "clutched" the front of area of his clothing, while here Officer Partney observed that the defendant's loose fitting pants quickly dropped from his waist area back down to his hips after the defendant twice pulled the pants up from his hips, and that it appeared that there was a heavy object in the right front pocket area of the pants. As in Jones, the defendant here watched the police cars as they drove by.

Unlike in Jones, Officer Partney knew that Davion Jackson was a convicted felon, and more significantly, Officer Partney knew

Jackson to belong to a street gang whose members were known to possess firearms. When Officer Partney ordered Jackson to stop and place his hands on the police car, Jackson became noticeably tense and nervous.

It is important to note that the court must consider the totality of the circumstances in determining whether Officer Partney's observations provided objectively reasonable suspicion that Jackson was engaged in criminal activity. United States v. Cortez, supra. The Court must view the officer's observations "as a whole, rather than as discrete and disconnected occurrences." United States v. Poitier, 818 F.2d 679, 683 (8th Cir. 1987). The fact that Jackson was observed in a high crime area, while perhaps not noteworthy in and of itself, is nevertheless a factor which may be considered by an officer, particularly when the area is noted for violent offenses. United States v. Bailey, 417 F.3d 873, 877 (8th Cir. 2005). The fact that the defendant appeared to be carrying a heavy object in his pocket is a further factor which the officer could consider. United States v. Barnes, 909 F.2d 1059, 1067 (7th Cir. 1990)(Pat down search justified by observation of "heavy object" in suspect's pocket); United States v. Atlas, 94 F.3d 447, 451 (8th Cir. 1996) cert. denied 520 U.S. 1130 (1997) (Reasonable suspicion to search bag carried by suspect that appeared to contain "heavy object"). The fact that Officer Partney knew the defendant to be a gang member, and that the gang's members

were known to possess firearms was likewise a legitimate and significant factor to be considered by the officer. United States v. Flett, 806 F.2d 823, 828 (8th Cir. 1986); United States v. Cornelius, 391 F.3d 965, 967 (8th Cir. 2004). When Officer Partney told the defendant to stop, Jackson became tense and nervous. Nervousness during a stop can be a factor to be considered by an officer in determining whether there is reasonable suspicion that the defendant may be armed. United States v. Atlas, 94 F.3d at 451.

While there might be an innocent explanation for all of the facts known to Officer Partney, they must be considered together in their totality. United States v. Maltais, 403 F.3d at 555. Based on all of the information known to Officer Partney, there was reasonable suspicion for the officer to believe that Jackson was engaged in criminal activity by carrying a weapon in his pocket. It is a violation of Missouri law to carry a concealed weapon. See R.S.MO. § 571.030.1(1). Officer Partney also knew that the defendant was too young to have a permit to carry a concealed weapon. The stop of the defendant was therefore lawful. Further, because Officer Partney had a reasonable suspicion to believe that Jackson was armed, the pat down search of the defendant and the subsequent search of Jackson's pocket and the recovery of the firearm was lawful.

The sole claim made by the defendant as grounds to suppress the statement he made subsequent to his arrest is that the statement was a direct result of his unlawful stop and the subsequent unlawful search and seizure. For the reasons set out above, the stop of the defendant and the subsequent search and seizure were lawful, and this claim by the defendant is not grounds on which to suppress the statements he made following his arrest.

Conclusion

For all of the foregoing reasons, the defendant's Motion To Suppress Evidence And Statements should be denied.

Accordingly,

**IT IS HEREBY RECOMMENDED** that Defendant's Motion To Suppress Evidence And Statements (Docket No. 27) be denied.

The parties are advised that they have until **October 4, 2011,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this 27th day of September, 2011.